IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Charles R. Major, Jr., aka *Charles R. Major*, <br>               Plaintiff, <br> vs. <br> Housing Authority of the City of Greenville, Ms. Marian Todd, and Mr. Mike Raymond, <br>               Defendants. | Civil Action No. 6:12-183-GRA-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 110). The plaintiff, who is proceeding *pro se*, alleges in his complaint that the defendants committed "Torts of Constitutional violations" against him and "illegally" terminated his Department of Housing and Urban Development contract for housing assistance.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) DSC, all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The defendants filed their motion for summary judgment on July 19, 2012. On that same date, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. The plaintiff filed his response in opposition on August 23, 2012, and the defendants filed a reply on August 31, 2012.

## FACTS PRESENTED

The plaintiff was a tenant at Scott Towers, an apartment building owned and maintained by the defendant Housing Authority of the City of Greenville. At the times

pertinent to this lawsuit, his rent was $206 per month through October 2009 and then $174 per month from November 2009 (def. m.s.j., ex. 1, Marian Todd aff. ).  His rent was due on the first of each month (def. m.s.j., ex. 2, Lease ¶ 3).  The plaintiff was late paying in October, November, and December 2009, and January and February 2010 (Todd aff. ¶ 4, ex. A).  The Housing Authority's Tenant Ledger shows that the plaintiff made payments, although most were late, between October 2009 and May 5, 2010.  However, he never fully paid the accumulated late fee payments and legal charges prior to being evicted (*see* Todd. aff., ex. A).

The Housing Authority sent notices in October, November, and December 2009 and January and February 2010[1] to the mailing address it had on file for the plaintiff, which was the mailing address for his apartment at Scott Towers.  The notices came back as undeliverable (Todd aff. ¶¶ 6-7).  The plaintiff's apartment appeared to be abandoned, and according to the plaintiff's complaint, he did not live in his apartment for eight months (comp. 7: "At the conclusion of eight months chemotherapy the plaintiff went in the first week of May 2010 to move back into Scott Towers to find his apartment empty.").

In his complaint, the plaintiff alleges that he had a colon tumor removed in July 2009, and thereafter he underwent chemotherapy.  He alleges that he needed a caregiver during chemotherapy, so he moved out of his apartment but continued to make rent payments as he intended to return.  He claims that he hand delivered to "Ms. Michelle _____ and to Ms. Carolyn Ford a statement of Plaintiff's fiscal address, an email address and his telephone number for location and contact during his eight months of chemotherapy" (comp. 5-6).  The plaintiff claims in his affidavit submitted in support of his previous motion for summary judgment that "numerous employees" of the Housing

---

[1] The October 2009 notice stated that the total rent and accrued charges owed by the plaintiff was $696.20. In November 2009, the amount owed was $304.60. In December 2009, the amount owed was $526.00. In January 2010, the amount owed by the plaintiff was $369.40, and in February 2010, the amount owed by the plaintiff was $605.80 (Todd aff., ex. B).

2

Authority knew that his mail box was closed in 2008 (doc. 78, pl. aff. ¶ 6(D)). He claims that the "reasonable and prudent thing" for the Housing Authority to do would have been to call his son, whose number was on file with the Housing Authority, to let him know the plaintiff was being evicted (*id.* ¶ 6(E); *see* pl. resp. m.s.j. 2).

In December 2009, defendant Marian Todd, the Senior Property Manager for the Housing Authority, filed an Application for Ejectment with the South Carolina Magistrate's Court (Todd aff. ¶ 9). On December 9, 2009, a Rule to Vacate or Show Cause was executed by a South Carolina Magistrate Court Judge (def. m.s.j., ex. 3, Rule to Vacate or Show Cause). On January 14, 2010, the process server executed an Affidavit of Nonservice, providing a sworn statement that he attempted on three separate days to serve Charles Major and failed to serve him (*id.*, ex. 4, Affidavit of Nonservice). On February 15, 2010, a Writ of Ejectment was executed by the South Carolina Magistrate Court Judge, ordering the Sheriff to serve the Writ of Ejectment (*id.*, ex. 5, Writ of Ejectment). On February 18, 2010, the Sheriff attached the writ on the door to the plaintiff's apartment (*id.*). On March 5, 2010, the plaintiff's personal property was removed from his property (*id.*).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

3

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248.

The plaintiff alleges a cause of action against the Housing Authority "for terminating a HUD contract of housing assistance" and a cause of action against two employees of the Housing Authority, Mike Raymond, Executive Director, and Marian Todd, Property Manager, under 42 U.S.C. § 1983 for violation of his right to due process. He claims that his due process rights were violated because he was evicted without being given proper notice. The plaintiff seeks "actual and compensatory damages . . . based on injuries sustained to due lack of due process" (comp. 10).

Under the federal public housing program authorized by the United States Housing Act of 1937, the United States Department of Housing and Urban Development ("HUD") provides operating subsidies to local public housing agencies ("PHAs"), such as the

Housing Authority, which own and operate housing for eligible low-income families and individuals. *See* 42 U.S.C. § 1437a(b)(6) (defining "public housing agency" for purposes of the public housing program as "any State, county, municipality, or other governmental entity or public body (or agency or instrumentality thereof) which is authorized to engage in or assist in the development or operation of public housing"). Tenants of public housing pay their PHAs monthly rent that is substantially below the cost of rental housing in the open market. *See generally id.* § 1437a(a) (establishing income eligibility standards and methods of rent calculation for residents of public housing). The operation of public housing by PHAs is subject to comprehensive federal regulation. Among other things, federal law dictates much of the content of public housing leases, requiring the inclusion of various provisions and prohibiting other provisions. *See* 42 U.S.C. § 1437d( l ).

The right of a public housing tenant to remain in his or her housing is "entitled to due process protection." *Caulder v. Durham Hous. Auth*., 433 F.2d 998, 1003 (4th Cir.1970) (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)). A PHA may terminate a tenant's lease for "serious or repeated violation of material terms of the lease," including, "failure to make payments under the lease." 24 C.F.R. § 966.4(l)(2)(i)(A). Except in cases of eviction for certain types of dangerous or drug-related criminal activity, federal law requires a PHA that intends to terminate a tenant's lease to afford the tenant an opportunity for a hearing, pursuant to grievance procedures that each PHA must adopt. *See* 42 U.S.C. § 1437d(k); 24 C.F.R. §§ 966.4(l)(3), 966.51(a)(2). The PHA must give written notice to a tenant of lease termination of "14 days in the case of failure to pay rent." 24 C.F.R. § 966.4(l)(3)(i)(A). The notice must state the specific grounds for the termination of the lease, inform the tenant of his or her right to make a reply, inform the tenant of his or right to examine PHA documents directly relevant to the termination or eviction, and inform the tenant of the grievance procedure. *Id.* § 966.4(l)(3)(ii). The notice must "be in writing and delivered to the tenant or to an adult member of the tenants's household residing in the dwelling or sent by

prepaid first-class mail properly addressed to the tenant." *Id.* § 966.4(k)(1). A PHA may evict a tenant by bringing a court action or "by bringing an administrative action if law of the jurisdiction permits eviction by administrative action . . . ." *Id.* § 966.4(l)(4). The regulations provide:

> Elements of due process shall mean an eviction action or a termination of tenancy in a State or local court in which the following procedural safeguards are required:
>
> (1) Adequate notice to the tenant of the grounds for terminating the tenancy and for eviction;
> (2) Right of the tenant to be represented by counsel;
> (3) Opportunity for the tenant to refute the evidence presented by the PHA including the right to confront and cross-examine witnesses and to present any affirmative legal or equitable defense which the tenant may have;
> (4) A decision on the merits.

*Id.* § 966.53(c). A PHA may provide for payment of penalties for late payment in its leases and may charge for court and legal costs when it evicts a tenant through an eviction action. *Id.* §§ 966.4(b)(3), 966.6.

Under the South Carolina Residential Landlord and Tenant Act, "the unexplained absence of a tenant from a dwelling unit for a period of fifteen days after default in the payment of rent must be construed as abandonment of the dwelling unit." S.C. Code Ann. § 27-40-730(a). The Act further states, "When a dwelling unit has been abandoned or the rental agreement has come to an end and the tenant has left personal property in the dwelling unit or on the premises in the cases not covered by subsection (d) above, the landlord may have the property removed only pursuant to the provisions of Sections 27-37-10 to 27-37-150." *Id.* § 27-40-730(e). The South Carolina Code provides, "The tenant may be ejected upon application of the landlord or his agent when (1) the tenant fails or refuses to pay the rent when due or when demanded, (2) the term of the tenancy or occupancy has ended, or (3) the terms or conditions of the lease have been violated." *Id.* § 27-37-10(A). The code further states, "Any tenant may be ejected in the

6

following manner, to wit: Upon application by the landlord or his agent or attorney any magistrate having jurisdiction shall issue a written rule requiring the tenant forthwith to vacate the premises occupied by him or to show cause why he should not be ejected before the magistrate within ten days after service of a copy of such rule upon the tenant." *Id.* § 27-37-20. Under section 27-37-30(B), "When no person can be found in possession of the premises, and the premises have remained abandoned, as defined in section 27-40-730 for residential rental agreements…for a period of fifteen days or more immediately before the date of service, the copy of the rule may be served by leaving it affixed to the most conspicuous part of the premises." Further, under section 27-37-40, "If the tenant fails to appear and show cause within the aforesaid ten days then the magistrate shall issue a warrant of ejectment and the tenant shall be ejected by his regular or special constable or by the sheriff of the county." Section 27-37-160 provides:

> In executing a writ of ejectment, the constable or deputy sheriff shall proceed to the premises, present to the occupants a copy of the writ and give the occupants twenty-four hours to vacate voluntarily. . . . . If the premises appear to be occupied and the occupant does not respond, the constable or deputy sheriff shall leave a copy of the writ taped or stapled at each corner and attached at the top of either the front or back door or in the most conspicuous place. Twenty-four hours following the posting of the writ, if the occupants have not vacated the premises voluntarily, the deputy sheriff, but not a constable, may then enter the premises by force, using the least destructive means possible, in order to effectuate the ejectment.

S.C. Code Ann. § 27-37-160.

"South Carolina eviction procedure is constitutionally adequate . . . Landlord-tenant law is traditionally the province of the states. State judges are bound as are we by the due process clause of the fourteenth amendment." *Joy v. Daniels*, 479 F.2d 1236, 1243 (4th Cir. 1973).

Viewing the evidence in the light most favorable to the plaintiff, this court finds that the plaintiff has not shown that the Housing Authority wrongfully terminated his lease.

7

Under paragraph 16 of the lease entered into between plaintiff and the Housing Authority, "nonpayment of rent…shall always be deemed to be a serious violation of material terms of this Lease" (def. m.s.j., ex. 2, Lease ¶ 16).  As noted above, under 24 C.F.R. § 966.4(b)(3), a PHA may provide for payment of penalties for late payment in its leases.  The plaintiff's lease provided as follows:

> Rent is due on the first day of each month . . . .
>
> If Resident fails to make the Rent payment by the close of business on the fifth working day of each month, a notice to terminate shall be issued by Landlord to Resident.  A late Charge of $10.00 or 10% of the Rent, whichever is greater, shall be charged to Resident whenever a Rent payment is received by Landlord after fifth working day of the month.  A check returned for non-sufficient funds shall be considered non-payment of Rent and in addition to the Late Charge, any fees charged to Landlord by its bank for the handling of the check shall be charged to Resident.
>
> In the event legal proceedings are required to recover possession of the Dwelling Unit, Resident shall be charged and pay the actual costs of such proceedings, including all court costs and attorney's fees.

(Def. m.s.j., ex. 2, Lease ¶ 3).

Here, the evidence shows that the plaintiff was late in paying his rent for several months, and he failed to timely pay the balance owed.  The Housing Authority's Tenant Ledger shows rent payments by the plaintiff on October 19, 2009; November 6, 2009; December 14, 2009; January 8, 2010; and February 16, 2010 (Todd aff., ex. A).[2]  Each of those late payments resulted in late fee charges (*id.*).  Moreover, legal fees were charged in January, February, and March 2010 (*id.*).  A PHA may terminate a tenant's lease for "serious or repeated violation of material terms of the lease," including, "failure to make payments under the lease." 24 C.F.R. § 966.4(l)(2)(i)(A).  Under paragraph 17 of the lease,

---

[2]The plaintiff does not appear to contend that his rent payments were timely (*see* pl. resp. m.s.j. 3).

"If a Landlord terminates this Lease, Resident shall be given written notice of the termination, as follows: a. For failure to pay rent, at least fourteen (14) days" (def. m.s.j., ex. 2, Lease ¶ 17). The Housing Authority sent Notices of Termination in October, November, and December 2009 and January and February 2010 to the mailing address it had on file for the plaintiff, which was the mailing address for his apartment at Scott Towers. While the plaintiff alleges he gave "Ms. Michelle _____ and . . . Ms. Carolyn Ford a statement of Plaintiff's fiscal address" during his chemotherapy, according to the affidavit of Ms. Todd, the only address the Housing Authority had on file for the plaintiff was his apartment at Scott Towers, and thus the defendants had no record of this alleged change of address notification. The notices came back as undeliverable (Todd aff. ¶¶ 6-7). The notices stated the date the rent was due and that since it was not timely paid a delinquent charge had been added. The notices further stated that the plaintiff's lease was being terminated for failure to pay rent and gave the total rent and accrued charges that were due. The notices stated that the plaintiff could pay the total sum due by a particular date in order to stop the eviction action and he could make a reply, examine the documents relevant to the termination of his lease, and request a grievance procedure regarding the termination of the lease (Todd aff., ex. B). Accordingly, the notices complied with the procedures required by the federal regulations. *See* 24 C.F.R. § 966.4.

The plaintiff did not appear to be living in the apartment, and according to the plaintiff's complaint, he was residing with someone else during this time. The lease, which is in compliance with 24 C.F.R. § 966.4, provides that the Housing Authority is authorized to terminate the lease when the tenant has not paid rent. Because the plaintiff could not be located and because items still remained in his apartment, the Housing Authority utilized the South Carolina Magistrate's Court in order to eject the tenant and his belongings in accordance with South Carolina law.

The plaintiff's lease further provided as follows:

9

> Within 30 days after Resident has permanently moved out of the Dwelling Unit, Landlord shall return the Security/Rental Deposit to Resident's forwarding new or last known address after deducting the costs of:
>
> a. unpaid Rent;
> b. repair of damages that exceed normal wear and tear as listed on the Move-Out inspection report; and
> c. other charges under this Lease.
>
> Landlord shall provide Resident with a written list of any charges made against the Security/Rental Deposit.

(Def. m.s.j., ex. 2, Lease ¶ 4). In accordance with this, the Housing Authority's Tenant Ledger and Tenant Transaction History Report shows that after the plaintiff was evicted, the Housing Authority credited the plaintiff's $250.00 security deposit as well as payments made by the plaintiff on March 15 and 24, 2010; April 9, 2010, and May 5, 2010, to his account balance (Todd aff., ex. A).

Based upon the foregoing, the plaintiff has failed to show that the Housing Authority wrongfully terminated his lease or violated his right to due process.

As to the cause of action against defendants Mike Raymond and Marian Todd under 42 U.S.C. § 1983, the defendants argue they are entitled to qualified immunity. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.* In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

10

The allegation against Marian Todd is that she violated the plaintiff's right to due process because he was evicted without being given notice. As discussed above, Ms. Todd filed an Application for Ejectment with the South Carolina Magistrate Court, which was the appropriate method to evict someone. A South Carolina Magistrate Court Judge then issued a Rule to Vacate or Show Cause, and Ms. Todd, as agent for the Housing Authority, hired a process server to serve the plaintiff. The process server attempted to locate the plaintiff, but was unsuccessful; therefore, an Affidavit of Nonservice was executed. The South Carolina Magistrate Court Jundge then issued a Writ of Ejectment and ordered the Sheriff to serve it on the plaintiff. The Sheriff affixed the writ on the door to the plaintiff's apartment. He was then evicted 15 days later, which was well after the required 24 hours as set forth in the South Carolina Code.

Defendant Marian Todd went through the appropriate legal channels to evict the plaintiff due to nonpayment of rent. She is entitled to qualified immunity for any due process right that allegedly was violated of the plaintiff because any governmental official, serving as a property manager, could reasonably believe that she was following the law and not violating any rights of the plaintiff, because the South Carolina Magistrate Court Judge authorized the Housing Authority to evict him. It is objectively reasonable for a government official to rely upon and follow a court order without the fear that any action she takes in compliance with that order would subject her to suit.

The allegation against Mike Raymond is that as director of the Housing Authority he authorized Marian Todd to evict the plaintiff. In Section 1983 actions, "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). To the extent the attempts to hold Mr. Raymond liable in his supervisory capacity, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29.

11

The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to make such a showing here. A governmental official in Mr. Raymond's position would reasonably believe that he was not violating any rights of the plaintiff when his property manager was going through the appropriate legal channels to have him evicted. Based upon the foregoing, the individual defendants are entitled to qualified immunity.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment (doc. 110) be granted. Should the district court adopt this court's recommendation, the pending nondispositive motions will be rendered moot.

Kevin F. McDonald
United States Magistrate Judge

September 5, 2012
Greenville, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
300 East Washington St, Room 239
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984.